PEARSON HARDWOOD FLOORING CO. v. PHILLIPS.—120 S. W. (2d) 973.

Eastern Section. July 2, 1938.

Petition for Certiorari denied by Supreme Court, October 8, 1938.

Howard H. Baker, of Huntsville, and C. A. Templeton, of Jellico, for plaintiff in error.

Jeffers & Jeffers, of Oneida, and R. L. Pope and B. C. Ogle, both of Knoxville, for defendant in error.

PORTRUM, J.  The plaintiff below, Talmon Phillips, was employed as an ordinary laborer, working at the rate of 12½ cents per hour in the woodworking plant of the defendant below, Pear-

son Hardwood Flooring Company, assigned to the duty of removing planed lumber from the planing machine, after it had gone through the machine, and perhaps the placing of the lumber upon the machine before it ran through the machine and his duties about the planing machine in performing these duties subjected him to no special danger growing out of the operation of the machine. But on the 21st day of January, 1937, the said Phillips was placed in charge of the machine with directions to operate it and to plane the lumber, he being directed to operate the machine diligently for the reason that the car from which the undressed lumber was taken had been upon the siding three days and it was time the work was completed.

The planing machine was an old one which had been rebuilt and the three cogwheels nested on the side of the machine which operated the revolving knives were unguarded. The lever placed near the position of the operator and used to idle the machine, that is to throw it out of gear, to use common automobile parlance, by detaching the machine's power, was out of order due to a tight belt attached to the machine and which operated it, and as a consequence the operator was unable to idle the machine by operating the lever. The knives of the machine were adjustable to different thicknesses of boards, and. were set by the operator for boards of one inch or an inch and a half, etc., as the case might be. But a carload of boards from the mill did not conform to the required thickness, and the machine being set for one inch boards it was found that many of the boards were thicker than an inch, and as a result when these thick boards were run through the machine they would stall the machine. But this defective operation could have been corrected by assorting the boards and adjusting the machine to accommodate the thicker boards after the standard boards had been planed, or the operation could have been made safe to the operator by idling the machine in throwing it out of gear by the use of the lever and then releasing the hung board by lifting the metallic fingers by the use of a fulcrum. Neither of these methods were used; the machine was not idle even when the idler was in working order because of the loss of time, the regular operator improvising an iron bent bar which he stuck into the machine and raised the metallic fingers and as soon as the pressure was released upon the board caused by the fingers, the machine being in operation took up its work immediately and there was no loss of time due to the shifting of the lever controlling the idler. Upon the day of the accident the idler was not in operation because of the tight belt, and the fingers had to be released by the iron rod while the machine was in operation, or while the power was on, or the power had to be shut off upon the lower floor entailing the loss of much time.

Phillips had worked about the machine, carrying off the dressed lumber as above detailed for some time and had observed its operation and he was instructed how to operate the machinery in this effective manner. On the day in question he was operating the machine when it stalled due to the thickness of a board and he took up the crooked round piping and undertook to lift the metallic teeth and release the board, and having removed the binding pressure the wheels began their rapid revolutions and while the operator was so engaged the iron pipe slipped and his right-arm sleeve was caught in the revolving cogs of the wheels and began winding the sleeve around the wheels, drawing his hand and arm steadily into the teeth of the revolving nest of wheels. To attract the attention of fellow workmen he threw the iron pipe into the machine and when it fell upon the floor with a resounding noise a fellow workman discovered his predicament, but was unable to extricate the plaintiff by idling the machine by the operation of the lever, and he had to run to the basement to cut off the power. During this time the machine was pulling the plaintiff's arm into the cogs of the wheel and was grinding it, like a sausage mill. When the power was finally shut off it was necessary to unbolt and remove the cogwheels from their nest in order to extricate the arm which had been mangled above the elbow, and was later removed about three inches from the shoulder joint.

Upon this state of facts the plaintiff instituted a suit as one at common law to recover damages for his injury. The defendant company had been engaged for many years in the manufacture of flooring and other wood products and employed many employees; it was subject to and at one time had qualified under the Workmen's Compensation Act, Code 1932, Sections 6851-6901, but later it had withdrawn and assumed the statutory responsibility defined in the act, which is the common law responsibility less the common law defenses.

The grounds of negligence laid in the declaration are these:

(a) The defendant failed to furnish the employee a reasonably safe place to work and perform the work required of him in the operation of the planing machine, to properly instruct him how to perform his duties in such dangerous work in a safe manner; and to properly and safely furnish and equip said planing mill, knives and accessories which were essential to its operation, with guard-rails or fenders to protect the person, limbs, and clothing of the plaintiff while in the performance of his necessary duties.

(b) In not carefully "sizing" (assorting the boards according to their thickness) so they would easily and gradually feed through said planer without stalling, conforming to the set or adjustment of the planing machine.

(c) In failing, neglecting, or inability to stop the power and the

operation of said plane within a reasonable time after notice of the plaintiff's predicament.

To the declaration the defendant plead the general issue.

Upon the trial the jury found in favor of the plaintiff and returned a verdict of $2,500. The case is here for review.

Should the trial judge have directed a verdict? At the conclusion of the plaintiff's testimony the defendant made its motion, and when it was overruled it declined to introduce testimony. However, its employees and its president had been used as witnesses for the plaintiff, since it was necessary for the plaintiff to use fellow-servants to establish the facts of his case. The first ground of the assignment is stated as follows:

"(a) The uncontroverted proof shows that the defendant did furnish the plaintiff a reasonably safe place in which to work and did furnish reasonably safe tools, appliances, and machines."

An attempt is made to confine the issue to the question of the installation of guards to protect the cogwheels of the machine. The president of the company, who was called by the plaintiff to establish the fact that the company had withdrawn from the Employers' Liability Act, stated upon cross examination that it was not practicable to enclose the cogwheels nesting on the side of the machine with a shield guard. Some of the other employees called by the plaintiff for other purposes corroborated the testimony of the president by stating that it was not practicable to enclose these wheels by a guard or shield, and it is insisted that since the testimony was given by witnesses called by the plaintiff that he is bound by it, notwithstanding other qualified witnesses and experts had testified that it was practicable and that such shield guards were manufactured but were not standard equipment. There is established a clear inference that the reason the shield guards were not made standard equipment was that full protection was afforded by the idler, and the method of adjusting the plane to the width of the boards, and so long as this equipment was utilized the danger from being caught in the nest of cogwheels was negligible, it being unnecessary for the operator to come in contact with them. But the idler being out of condition and it being necessary to stop the machinery from the lower floor or to use the bent iron bar or pipe, and the employee being instructed in the use of the iron pipe, then it became a hazardous undertaking to raise these metal teeth by the use of the bent pipe, and at the same time avoid coming into contact with the nest of cogwheels, and this unanticipated operation by the manufacturer made it essential that shield guards be used to protect the workmen, and had such been the normal operation the shield guards would have been manufactured as standard equipment. But if it would be impracticable to install a shield guard over this nest of cogwheels, and the

company was not negligent in not so installing the shield guards nevertheless it was negligent in operating the machinery with the idler out of order which necessitated the use of the bent pipe from a position endangering the operator, and it cannot escape liability upon the theory that it could not guard the wheels. For this reason the question of whether the operator could have been protected from the cogwheels by a guard or shield becomes immaterial, for had the machine been in proper working order his position in operating the machine would have been a place of safety, and the company would have performed its duty by providing for him a safe place to work. It could not render the place of work unsafe to save time and expedite the work by abandoning the use of the safety appliances, and letting them get in disrepair and unworkable, and requiring the workman to perform a hazardous duty in the carrying on of the work. Had the idler been capable of operation when the attention of the fellow-servant was called to the predicament of the plaintiff he could have thrown the lever and stopped the machine and perhaps saved the hand and arm of the plaintiff, but as it was it was necessary that he run to the basement to shut off the machine and in the meantime the arm was destroyed.

The court is of the opinion that the proven facts of what occurred and the condition of the machinery speaks for itself and clearly establishes the violation of the duty on the part of the master to provide a safe place for the servant to work. The operation of this machine in the described condition was in direct violation of the statute which provides: "No person shall remove or make ineffective any safeguard around or attached to any machinery . . . or apparatus, except for the purpose of making repairs thereon, and all safeguards so removed shall be replaced promptly; . . ." Code 1932, Section 5346. The master certainly rendered ineffective an apparatus, i. e., the idler, which neglect proved the proximate cause of the injury. In view of the quoted statute it is not necessary to cite or review the cases defining the master's duty.

As heretofore stated, if we admit that the plaintiff is bound by the testimony of his own witnesses in reference to the shield guard, nevertheless this testimony is immaterial, for the plaintiff's proof establishes the fact that the idler was out of commission and would not operate because of the tight belt operating the machine. And the elimination of this safety apparatus was the proximate cause of the injury. But the plaintiff is not bound by every fact or opinion testified to by his witnesses. The rule is a party cannot call in question the integrity and credibility of his own witnesses, but he is not bound by every isolated fact or opinion stated by the witnesses when it conflicts with other credible testimony given by witnesses for the party. It is for the jury to weigh and reconcile conflicting testimony given by the witnesses

for each party as well as to reconcile the testimony between the witnesses of the contending party. Witnesses do not see nor gain the same impression when viewing an act or occurrence, and it is a recognized sign when too many witnesses tell the identical story that this is a suspicious circumstance. And to hold that if the testimony of a party's witnesses varies then he could not recover, he could recover upon no theory. The rule is otherwise as is found in 28 Ruling Case Law, 227.

The plaintiff's expert witness stated that these cogwheels should have had shield guards, and this testimony is assigned as error invading the province of the jury. As heretofore stated, this issue has become immaterial. The witness was asked a proper question which he should have answered by using the favorite word "might" have installed shield guards. He used the word "should" instead. Counsel excepted to the question which was overruled by the trial judge and the witness made the answer as indicated, which was perhaps an improper answer under the rule, but no request was made to strike the answer or further exception entered. The question asked not being improper, then the trial judge committed no error in his ruling and he was not requested to rule after the reply was made which might be improper as an attempt by the witness to usurp the province of the jury.

It is next insisted that the plaintiff's action was under the Workmen's Compensation Law of Tennessee, because the plaintiff had failed to prove defendant complied with the law in withdrawing from the Act. The defendant's president stated to the plaintiff before the trial and testified upon the trial that the company had withdrawn from the Act and published the required notices, its purpose being to carry the risk itself, and it is in no position to insist upon its own failure to comply with the statute in withdrawing, and certainly if its employee acts upon its declaration of withdrawal and treats the company as if it were without the law, then the company is in no position to defeat the right of the employee by insisting that it failed to comply with the statute and was still within the law, defeating the right of the injured employee to recover since he had elected to sue at common law.

Lastly, it is said that the recovery is excessive. The jury returned a verdict for $2,500 for the loss of a right arm of a young employee. It is argued that the Workmen's Compensation Act does not authorize the recovery of this large a sum for the loss of an arm, and that the standard fixed by the Compensation Act should be the standard recognized by the courts in the common law action. If this were true, it would be an invitation to all employers to withdraw from the law, there being much to gain and nothing to lose thereby. The standard fixed by the Compensation Act covers cases growing out of accident injuries and negligent in-

juries and covers a broader field than the liability of the master at common law for his negligent injuries, and to equalize the claims the measure of recovery is reduced. It has no application to the common law action.

There are some other assignments questioning the admission of evidence and these have been considered, and the court finds no affirmative error justifying a reversal. It follows that the judgment of the lower court is affirmed with costs.

Ailor and McAmis, JJ., concur.